UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| **JAMES S. SPIKER** | **CASE NO. 3:20-CV-00517** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **CORY M. SALTER, ET AL.** | **MAG. JUDGE KAYLA MCCLUSKY** |

**RULING**

Pending before the Court is a Motion for Partial Summary Judgment as to Punitive Damages filed by Defendant Flat Creek Transportation, LLC ("Flat Creek") [Doc. No. 100]. Flat Creek seeks judgment as a matter of law dismissing Plaintiff James S. Spiker's ("Spiker") claim for punitive damages against it. Spiker has filed an opposition [Doc. No. 111]. Defendant Michael Cory Salter ("Salter") has filed an opposition [Doc. No. 112]. Flat Creek has filed a reply to Spiker's opposition [Doc. No. 115].

For the following reasons, Flat Creek's Motion for Partial Summary Judgment is GRANTED, and Spiker's claim for punitive damages against Flat Creek is DISMISSED WITH PREJUDICE.

**I.    FACTS AND PROCEDURAL BACKGROUND**

This case arises out of a motor vehicle accident which occurred on November 14, 2019, in Richland Parish, Louisiana, when an 18-wheeler owned by Flat Creek and being operated by Salter, an employee of Flat Creek, rear-ended Spiker's vehicle on Interstate 20. The crash injured Spiker and killed Salter's co-driver, Robert Waye. A blood sample was taken, which revealed that Salter was driving under the influence of methamphetamine. Salter pled guilty to vehicular homicide and possession of a schedule II controlled dangerous substance in Richland Parish, and

he was sentenced to ten (10) years at hard labor [Salter Deposition, Doc. No. 90-5, p. 60].

Spiker alleges that the accident was caused by the negligence of Salter in operating his vehicle in a careless manner, failing to pay attention, failing to brake in time to avoid the accident, driving at an excessive rate of speed, failing to maintain control, driving in a reckless and dangerous manner, and driving while under the influence of illegal narcotics [Doc. No. 1].

Spiker further alleged that Flat Creek was directly negligent by failing to train and instruct Salter to adequately operate and handle Flat Creek's vehicles, failing to supervise Salter, negligent entrustment, and failing to properly screen and monitor its drivers for the use of narcotics [*Id*.]. However, in a separate ruling and judgment, this Court dismissed Spiker's direct negligence claims against Flat Creek. Due to the principle of vicarious liability, Flat Creek remains a defendant in this matter. [Doc. Nos. 104, 105]

With regard to punitive damages, Spiker asserts that Salter's wanton or reckless disregard for the rights and safety of others was a cause in fact of his injuries. Spiker argues he is therefore entitled to recover punitive damages from Salter pursuant to Louisiana Civil Code Article 2315.4. Spiker further contends that Flat Creek is vicariously liable for punitive damages. Spiker additionally argues that an employer who contributes to the intoxication of a driver can be liable for punitive damages under Louisiana law.

Flat Creek asserts in the pending motion that it is entitled to judgment as a matter of law dismissing Spiker's claim against it for punitive damages for several reasons. First, Flat Creek cites this Court' previous ruling in *Jones v. Travelers Indem. Co.*, No. 6:18-CV-00946, 2021 WL 54128, at *3 (W.D. La. Jan. 6, 2021) (Doughty, J.), that an employer cannot be vicariously liable for punitive damages under Louisiana law. Flat Creek contends that Article 2315.4 is aimed solely

at the allegedly intoxicated driver and nobody else, such that punitive damages against Flat Creek on any basis would be improper. Alternatively, Flat Creek asserts that even if an employer who contributes to the intoxication of a driver can be liable for punitive damages under Louisiana law, Flat Creek did not in any way contribute to Salter's alleged intoxication on November 13, 2019 and could have done nothing to prevent that alleged intoxication. Flat Creek concludes it has no liability for punitive damages.

In his opposition, Spiker suggests that *Jones* was wrongly decided. Spiker further contends that Flat Creek could have prevented Salter from driving in an impaired state and causing this crash.

In his opposition, Salter contends only that his intoxication at the time of the crash is a contested fact.

The issues have been thoroughly briefed, and the Court is now prepared to rule.

## II.     LAW AND ANALYSIS

### A.     Summary Judgment

Summary judgment "shall [be] grant[ed] . . . if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id*.

If the moving party can meet the initial burden, the burden then shifts to the nonmoving party to establish the existence of a genuine issue of material fact for trial. *Norman v. Apache*

3

*Corp.*, 19 F.3d 1017, 1023 (5th Cir. 1994). The nonmoving party must show more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In evaluating the evidence tendered by the parties, the Court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255.

**B. Analysis**

As indicated above, Flat Creek contends it is entitled to judgment as a matter of law pursuant to this Court's ruling in *Jones*. Alternatively, Flat Creek asserts it is entitled to summary judgment because it did not contribute to Salter's alleged intoxication on November 13, 2019 and could have done nothing to prevent that alleged intoxication. The Court will address each argument in turn.

**1. This Court's prior decision in *Jones v. Travelers***

In diversity cases such as this, federal courts must apply state substantive law. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 79 (1938). Therefore, the question of whether vicarious liability for punitive damages exists under Louisiana Civil Code article 2315.4 depends upon Louisiana law. To determine Louisiana law in a diversity case, federal courts look to the final decisions of the state's highest court. *Transcontinental Gas Pipeline Corp. v. Transportation Ins. Co.*, 953 F.2d 985, 988 (5th Cir. 1992). In the absence of a final decision by the state's highest court on the issue at hand, it is the duty of the federal court to determine, in its best judgment, how the highest court of the state would resolve the issue if presented with the same case (an "*Erie* guess"). *American Intern. Specialty Lines Ins. Co. v. Canal Indem. Co.*, 352 F.3d 254 (5th Cir. 2003).

In *Jones v. Travelers, supra*, this Court recognized that the Louisiana Supreme Court has

not addressed this exact issue. Then, after reviewing the statute, legislative history, and jurisprudence applicable to Louisiana Civil Code article 2315.4, this Court made an *Erie* guess that the highest court of the State of Louisiana would find that Louisiana Civil Code article 2315.4 would not allow exemplary damages to be awarded against a vicariously liable employer of an intoxicated driver.

This Court specifically noted that, although the Louisiana Supreme Court has not addressed this exact issue, it has addressed an analogous one. In *Berg v. Zummo*, 786 So.2d 708 (La. 2001), the plaintiff sued an intoxicated driver, but also brought the action against the driver's friends and the bar owner that sold alcohol to the minor driver. In reversing the jury's exemplary damage award against the bar owner and driver's friends, the Louisiana Supreme Court held that Louisiana Civil Code article 2315.4 does not allow the imposition of exemplary damages against those who have contributed to the driver's intoxication. This ruling was based upon the specific language of article 2315.4, upon the legislative history of article 2315.4, (which reflected the legislature's intent to penalize only the intoxicated driver of the motor vehicle), and upon the strict construction given to penal statutes like article 2315.4.

This Court concluded that since, after *Berg*, Louisiana law does not allow exemplary damages under article 2315.4 against an employer who actually contributed to the driver's intoxication, it follows that exemplary damages should not be allowed against an employer who did not contribute to the employee driver's intoxication and who is only liable vicariously.

In his opposition, Spiker argues that this Court's reliance on *Berg* in *Jones* was misplaced because in *Berg* the Louisiana Supreme Court expressly and unequivocally stated that its decision did not address the imposition of punitive damages on an employer through a theory of vicarious

liability. Spiker contends further that the *Berg* decision is distinguishable on its facts, as it involves dram shop liability. Finally, Spiker contends that the other cases relied upon by this Court in *Jones* are either inapplicable, distinguishable, or were wrongly decided.

This Court is not persuaded by Spiker's arguments. What the Supreme Court did make clear in *Berg*, as this Court recognized in *Jones*, is that "the legislative history reflects the legislature's intent to penalize only the intoxicated driver of [a] motor vehicle and is in line with the narrow construction that this Court gives to penal statutes." *Berg*, at 717–18. This statement was not limited to dram shop cases but was instead an unambiguous expression of the Supreme Court's view of the limited scope of Article 2315.4 as punishing the driver and the driver alone.

Additionally, while Spiker claims that at least four Louisiana courts have allowed for vicarious liability for punitive damages, three of those opinions predated the 2001 decision in *Berg*. *See Lacoste v. Crochet*, 99-0602 (La. App. 4 Cir. 1/5/00), 751 So.2d 998; *Curtis v. Rome*, 98-0966 (La. App. 4 Cir. 5/5/99), 735 So.2d 822; *Levet v. Calais & Sons, Inc.*, 514 So.2d 153 (La. App. 5 Cir. 1987).

The fourth case cited by Spiker is *Landry v. Nat'l Union Fire Ins. Co. of Pittsburg*, 19-337 (La. App. 5 Cir. 12/30/19), 289 So. 3d 177, 184, where the Louisiana Third Circuit Court of Appeal found that an employer may be held liable for exemplary damages awarded against an employee under La. C.C. art. 2315.4, where the evidence shows that the employer contributed to or might have prevented the employee from driving while intoxicated. The *Landry* court found that the plaintiff adequately alleged that the defendant-employer failed to carry out appropriate screening and training; that the employee had a history of drug use; and that this employee had a deteriorating driving performance. Spiker asserts that each of these factors exist in this case, and therefore, he

6

may impute Salter's punitive damages to Flat Creek.

This Court respectfully finds that, in addition to being inconsistent with *Berg* and *Jones*, *Landry* is an outlier that should not be followed by the Court

Further, as this Court noted in *Jones*, three federal district courts examining this issue under Louisiana law have all found the plaintiff cannot recover exemplary damages against a vicariously liable employer under Louisiana Civil Code article 2315.4. See *Lankford v. National Carriers, Inc.*, 2015 WL 518736 (W.D. La. 2/6/15); *Phelps v. Daimler Trucks North America, LLC,* 2015 WL 12564180 (E.D. La. 6/26/15); and *Smith v. Zurich American Ins. Co.,* 1996 WL 537746 (ED. La. 9/20/96).

This Court therefore reaffirms its *Erie* guess in *Jones* that the highest court of the State of Louisiana would find that Louisiana Civil Code article 2315.4 would not allow exemplary damages to be awarded against a vicariously liable employer of an intoxicated driver.

For this reason alone, Flat Creek is entitled to summary judgment dismissing Spiker's claim against it for punitive damages. The Court will nevertheless consider Flat Creek's alternative argument that even if an employer who contributes to the intoxication of a driver can be liable for punitive damages under Louisiana law, it did not in any way contribute to Salter's alleged intoxication on November 13, 2019 and could have done nothing to prevent that alleged intoxication.

### 2. Whether Flat Creek contributed to or could have prevented Salter's intoxication.

Flat Creek states it is mindful of cases that suggest that an employer who contributes to the intoxication of a driver can be liable for punitive damages. For example, in *Thompson v. Travelers Indemnity Company*, No. CIV.A. 19-1122, 2020 WL 6888280 (E.D. La. Oct. 15, 2020),

7

citing *Landry*, the Court recognized that a plaintiff could impute punitive damages on an employer when the employee causes injury while driving intoxicated, IF the employer may have prevented the employee from driving while intoxicated or contributed to the intoxication of the employer. Flat Creek asserts, however, that based upon the undisputed facts of this case, there is no basis for any argument that Flat Creek could have prevented or contributed to Salter's alleged intoxication.

Flat Creek states that Salter worked for Flat Creek for a few months in 2018 and had to pass a drug test to be hired, which he did. He then came back to work for them in 2019 and again passed a drug test in connection with his hire, with the accident occurring a mere thirty-five days after that negative drug test. Salter truthfully informed Flat Creek in 2019 that he had never failed a drug test and that he had never refused a drug test.

Flat Creek further states that Salter did not obtain drugs from Flat Creek and Flat Creek had no knowledge that Salter was doing drugs that night, or at any time before then. The night before the accident, Salter alone made the decision to smoke methamphetamine and synthetic marijuana by himself at the loading facility without anybody else and while his co-driver, the only other Flat Creek employee with him, was in the truck. He did so of his own volition and then made his own decision to get behind the wheel of a vehicle, without any knowledge or assistance from Flat Creek. Thus, according to Flat Creek, it simply did not contribute to Salter's alleged intoxication at the time of the accident.

Spiker responds that Flat Creek failed to properly screen Salter before hiring him. Spiker asserts that Flat Creek was a "second-chance company" with a history of hiring dangerous drivers, and Flat Creek knew Salter was a dangerous driver that posed a grave risk of harm to the public due to his driving record being littered with accidents and violations.

Spiker states that Salter was introduced to methamphetamine by his Flat Creek co-driver during his first stint with Flat Creek. Spiker alleges that on the date of the accident, Salter entered Flat Creek's home office with the black bag containing the methamphetamine, smoking pipe, synthetic marijuana and bottle of fake urine, yet no one from Flat Creek monitored, searched Salter or ensured that he was not in possession of drugs.

Spiker further states that Flat Creek failed to implement and/or execute a defined safety program and drug screening program that would have prevented the crash. Spiker also asserts that Salter himself will testify that Flat Creek is responsible for this accident for failing to make sure he was free from drugs by conducting random drug testing. Spiker states that Flat Creek allowed Salter to drive a truck with a broken windshield and missing side-view mirror. Spiker additionally states that Flat Creek should have been aware that in the weeks prior to this accident, while driving a Flat Creek tractor trailer, Salter made a video which he uploaded to Facebook depicting a horrific road rage incident where Salter was riding another vehicles bumper in the dark of night, while belligerently swearing and threatening to kill other drivers.

Spiker further states that Flat Creek's drug testing policy did not provide for testing synthetic marijuana, and Salter was also under the influence of synthetic marijuana at the time of the accident.

Spiker concludes that Flat Creek could have prevented Salter from driving in an impaired state.

Flat Creek replies that Spiker has failed to controvert that Salter never failed or refused a drug test before being rehired by Flat Creek in 2019. Flat Creek states that it actually had a revised drug testing policy at the time Salter was hired. That policy is based upon federal regulations,

9

which form the industry standard in the trucking business. Additionally, Flat Creek hired a third-party, Transportation Safety Services ("TSS"), to assist with its drug testing to make sure Flat Creek stayed compliant.

Flat Creek further states that applicants are made aware of Flat Creek's drug testing policy (like Salter, who signed that he had received a copy of the policy) and must pass a drug test to be hired. If they fail or refuse to take a drug test, they are not hired. Once a quarter, a random allotment of Flat Creek drivers is selected by TSS for random drug testing. If a driver fails a random drug test or refuses to take a drug test, they are fired by Flat Creek.

Flat Creek states that after being hired as a Flat Creek driver, Salter, like all other drivers, was subject to random drug testing and would have been fired had he failed or refused a random test. Flat Creek states Salter's testimony that he carried fake urine specifically to evade a random drug test by Flat Creek belies any argument that Salter was unaware that he would be randomly drug tested.

Lastly, Flat Creek asserts that the allegation that Salter first tried methamphetamine with his Flat Creek co-driver in 2018 does not make Flat Creek liable for punitive damages for Salter's accident in November 2019. Salter was not doing drugs when he was rehired by Flat Creek in October 2019. He then made his own decision to do drugs after he was rehired by Flat Creek. He did not acquire the drugs he used before the accident from Flat Creek or with the knowledge of anyone at Flat Creek. Flat Creek states that Spiker cannot point to anyone in a managerial position, or in fact anyone who was employed by Flat Creek in 2019, who had knowledge of any drug use by Salter. To the contrary, the individuals who made hiring decisions for Flat Creek had no knowledge of any drug use by Salter before the accident at issue occurred.

Flat Creek concludes there is no basis to argue that Flat Creek should be subjected to punitive damages for the decision made by Salter and Salter alone, a decision which Flat Creek neither contributed to nor could have prevented.

This Court finds that Flat Creek is entitled to judgment as a matter of law for this reason also. Spiker has failed to establish a genuine issue of material fact that Flat Creek contributed to or could have prevented Salter's alleged intoxication. Further, this Court has already dismissed Spiker's direct negligence claims against Flat Creek with prejudice, and the only remaining claims against Flat Creek are based upon vicarious liability.

Additionally, allegations of negligence alone will not suffice for the imposition of punitive damages under Article 2315.4. The Article expressly requires that the defendant engage in "wanton or reckless" conduct, which is somewhere between negligence and an intent to harm and requires "conscious indifference" to the consequences of a defendant's actions such that the defendant knows or should know that harm will occur but proceeds anyway. *See Blackshear v. Allstate Ins. Co.*, 94-765 (La. App. 3 Cir. 12/7/94), 647 So. 2d 589, 594; *Hill v. Sampson*, 628 So. 2d 81, 84 (La. Ct. App. 1993). Consequently, the alleged acts of negligence, while already dismissed with prejudice and irrelevant, cannot give rise to a claim for punitive damages against Flat Creek pursuant to Article 2315.4.

Finally, most of Spiker's claims are allegations of negligent hiring. Spiker essentially argues that purported negligent hiring makes an employer liable for punitive damages if its employee engages in conduct on the job that would subject him to punitive damages. However, Article 2315.4 is directed solely to punishing drunk driving, not negligent hiring or any other conduct. Article 2315.4 states:

11

> In addition to general and special damages, exemplary damages may be awarded upon proof that the injuries on which the action is based were caused by a wanton or reckless disregard for the rights and safety of others *by a defendant whose intoxication while operating a motor vehicle* was a cause in fact of the resulting injuries.

(Art. 2315.4). Because there is nothing in Article 2315.4 that relates to any other cause of action, given the principles of strict construction, it should not be expansively interpreted to encompass such claims.

Accordingly, this Court finds Flat Creek is entitled to judgment as a matter of law dismissing Spiker's claim for punitive damages on this basis as well.

### III.     CONCLUSION

For the foregoing reasons, Flat Creek's Motion for Partial Summary Judgment as to Punitive Damages [Doc. No. 100] is GRANTED. Spiker's claim for punitive damages against Flat Creek is DISMISSED WITH PREJUDICE.

MONROE, LOUISIANA, this 24th day of January 2022.

_____
**TERRY A. DOUGHTY
UNITED STATES DISTRICT JUDGE**

12